UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ROBERT J. MAYER SR.                                          Plaintiff

v.                                          Civil Action No. 3:22-cv-237

LOUISVILLE LADDER INC., ET AL                               Defendants

\* \* \* \* \*

**ORDER**

Defendants Louisville Ladder, Inc. ("LLI"), Wal-Mart Starco, LLC, Wal-Mart Stores East, LP, and Walmart, Inc.,[1] move for summary judgment, [DE 58], and to exclude plaintiff's expert opinion testimony as unqualified and inadmissible under FRCP 702(b)-(d). [DE 59].[2] Responses and replies were filed to both motions. [DE 67; DE 69; DE 68; DE 70]. Plaintiff Robert J. Mayer ("Mayer") filed a motion to strike and exclude all of Defendants' expert testimony as untimely. [DE 62]. Defendants responded, [DE 64], and Mayer did not reply. These matters are ripe. For the reasons below, Defendants' motion to exclude [DE 59] is **DENIED**, Mayer's motion to strike and exclude [DE 62] is **DENIED,** and Defendants' motion for summary judgment [DE 58] is **GRANTED in part** and **DENIED in part.**

## I.      BACKGROUND

This action arises from injuries Mayer sustained while using a ladder to install a sunshade on his son's home. [DE 59-1 at 696; DE 67 at 1033]. Mayer testified that both the ladder's front legs were placed in the grass, while one of the ladder's rear legs was placed in mulch and the other

---

[1] Wal-Mart Starco, LLC, Wal-Mart Stores East, LP, and Walmart, Inc. are referred to as the "Walmart Defendants" and with LLI are collectively referred to as Defendants.

[2] Although Counsel attached Memorandums in support of their motions [DE 58-1; DE 59-1], the Joint Local Rules for the Eastern and Western Districts of Kentucky contemplate a single, unified motion and memorandum. See Local Rule 7.1. In the future, Counsel is advised to file a unified motion.

on pavers. [DE 61-5 at 969]. Mayer climbed up and down the ladder at least once without incident while he retrieved a carriage bolt to attach the sunshade. [*Id*. at 967]. After climbing back up the ladder, and while attempting to attach a carriage bolt and nut to the sunshade, Mayer fell off the ladder. [*id*. at 973]. Mayer described the incident in his deposition as "one moment [he was] standing on the ladder, the next moment [he was] not on the ladder anymore." [*Id*. at 973-74]. Photographs of the ladder show that post-accident, the front left leg of the ladder buckled inwards, and the metal of the first step is bent. [DE 61-2 at 883; DE 60-1 at 721]. Mayer was alone at the time of the accident but called his wife and son to take him to the hospital. [DE 61-5 at 976].

Mayer sued Anthem Insurance Companies, Inc., ("Anthem"), Home Depot U.S.A., Inc., ("Home Depot"), and LLI alleging state law claims for strict product liability, breach of warranty, strict liability-failure to warn, and negligence. [DE 1 at 7-18 ¶¶ 26-67]. Mayer voluntarily dismissed his claims against Anthem. [DE 16]. The Court granted the parties' joint motion [DE 14] to dismiss all claims against Home Depot. [DE 17]. Mayer filed his First Amended Complaint against LLI and the Walmart Defendants. [DE 22].[3] On September 20, 2022, the Court entered a scheduling order, with all expert discovery due by September 14, 2023. [DE 33 at 525]. On September 15, 2023, the Court granted Defendants' unopposed motion for extension of time to file expert witness disclosures, extending the deadline to September 29, 2023. [DE 55].

LLI and the Walmart Defendants moved for summary judgment, arguing they are entitled to summary judgment as a matter of law because there is no evidence that the subject ladder was defective, or that any defect caused Mayer's injuries. [DE 58 at 659]. The same day, Defendants filed a motion to exclude the opinion testimony of Mayer's expert, arguing that he was not

---

[3] Mayer's Amended Complaint alleged claims of strict product liability, strict liability-design defect, strict liability-manufacturing defect, breach of express warranty, violation of the Consumer Products Safety Act, 15 USCS § 2064, ("CPSA"), breach of implied warranty of merchantability, strict liability-failure to warn, negligence, negligent failure to warn, and an independent claim for punitive damages. [DE 22 at 258-286].

qualified to render an opinion and that his opinion was inadmissible under Rule 702(b), (c), and (d). [DE 59 at 693].

Mayer responded to the motion for summary judgment, [DE 67] arguing that Mayer's deposition testimony and the opinions of his expert create a genuine dispute of material fact. [*Id.* at 1043-53]. Defendants replied, arguing that Mayer's offered evidence does not create a genuine dispute of material fact. [DE 69 at 1067].  Mayer also responded to the motion to exclude, attaching a supplemental affidavit from his expert and arguing that Defendants' arguments go to the weight and not the admissibility of his expert's opinions. [DE 68 at 1060]. Defendants replied, reasserting their prior arguments. [DE 70 at 1086-88].

Mayer filed a motion to strike Defendants' expert designations as untimely and exclude all Defendants' expert testimony. [DE 62 at 985]. Defendants responded, [DE 64 at 995], arguing it was a good-faith mistake that counsel believed the deadline for disclosure was October 6, 2023, not September 29, 2023. [*Id.*] Defendants also argued that the one-week delay in disclosure did not cause any prejudice to Mayer, and in any event, does not justify exclusion of all Defendants' expert testimony. [*Id.* at 995-97]. Mayer did not reply.

## II.     DISCUSSION

### 1.  Defendants' Motion to Exclude Larry Dehus [DE 59]

Defendants move to exclude Mayer's proposed expert, Larry Dehus ("Dehus"), arguing that Mayer has failed to show Dehus has knowledge, skill, experience, training, or educational background to offer an expert opinion on the cause of the ladder failure, and has failed to show that his opinions were based on sufficient facts or data, from reliable principles and methods, and applied reliably to the specific facts of the case. [DE 59-1 at 695-96; DE 70 at 1086-88].

A. *Standard of Review*

Rule 702 of the Federal Rules of Evidence sets forth the standard of admissibility for expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), "the Supreme Court established a general gatekeeping obligation for trial courts to exclude from trial expert testimony that is unreliable and irrelevant." *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (alteration and internal quotation marks omitted). "Under Rule 702 of the Federal Rules of Evidence, 'a proposed expert's opinion is admissible . . . if the opinion satisfies three requirements. First, the witness must be qualified by knowledge, skill, experience, training, or education. Second, the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue. Third, the testimony must be reliable.'" *Burgett v. Troy-Bilt LLC*, 579 Fed. App'x 372, 376 (6th Cir. 2014) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008)).

Although the Court has a "gatekeeping role" with respect to the admissibility of expert testimony, "the evaluation of expert testimony is generally left to juries." *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 597-98); *see also W. Tenn. Chptr. of Associated Builders & Contractors, Inc. v. City of Memphis*, 300 F. Supp. 2d 600, 605 (W.D. Tenn. 2004) ("The Court's role, at this stage, as outlined by *Daubert* and developed throughout the

Federal Rules of Evidence, is to be the gatekeeper of evidence, not the weigher of evidence.")
(citing *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000)).

   B.  *Dehus' Rule 26(a)(2)(B) Disclosure*

   On July 14, 2023, Plaintiff made his Rule 26(a)(2)(B) expert disclosure of Dehus. The

disclosure included: (1) a letter, dated July 22, 2021, containing the materials he reviewed and

relied on as well as his opinions;[4] (2) Dehus' Curriculum Vitae; (3) a listing of trial and deposition

testimony from 2010 to the present; and (4) an invoice for Dehus' work on this case.  [DE 53-1

(collectively, "Dehus' report")].  At the time of disclosure, Defendants did not object to the

completeness of Dehus' disclosure or request an opportunity to dispose him.

   Rule 26(a)(2)(B) provides that Dehus' disclosure, must contain:

   (i) a complete statement of all opinions the witness will express and the basis and
   reasons for them;
   (ii) the facts or data considered by the witness in forming them;
   (iii) any exhibits that will be used to summarize or support them;
   (iv) the witness's qualifications, including a list of all publications authored in the
   previous 10 years;
   (v) a list of all other cases in which, during the previous 4 years, the witness testified
   as an expert at trial or by deposition; and
   (vi) a statement of the compensation to be paid for the study and testimony in the
   case.

*Id.*  The Sixth Circuit has noted:

   Under Rule 26(a), a "report must be complete such that opposing counsel is not
   forced to depose an expert in order to avoid an ambush at trial; and moreover the
   report must be sufficiently complete so as to shorten or decrease the need for expert
   depositions and thus to conserve resources." *Salgado v. Gen. Motors Corp.*, 150
   F.3d 735, 742 n.6 (7th Cir. 1998) (citing *Sylla–Sawdon v. Uniroyal Goodrich Tire
   Co.*, 47 F.3d 277, 284 (8th Cir. 1995)). "Expert reports must include 'how' and
   'why' the expert reached a particular result, not merely the expert's conclusory
   opinions." *Id.*

---

[4]  The Court notes that Dehus' report was dated approximately nine months before Mayer filed this lawsuit.
Such a report, "prepared solely for purposes of litigation, as opposed to testimony flowing naturally from
an expert's line of scientific research or technical work, should be viewed with some caution." *Phillips v.
Tricam Indus., Inc.*, No. 1:19-CV-00184, 2020 WL 1816468, at *7 (W.D. Mich. Feb. 20, 2020) (citing
*Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007)).

*R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010).

Dehus' report offers the opinion that "insufficient strength in the ladder rail was the cause of the failure and Mr. Mayer's fall and subsequent injuries."[5] [DE 53 at 643]. Dehus states that he was provided photographs depicting the ladder's placement at the time of the incident, [DE 53-1 at 641], and arranged with Mayer to pick up the ladder in question at his home. [*Id.*]. Dehus states that he interviewed Mayer and recites the facts learned during the interview. [*Id.*]. Dehus' report indicates that he brought the ladder to his laboratory for a physical examination and made several observations regarding the ladder composition, manufacture labeling, and condition of the ladder after the accident. [*Id.* at 642]. Dehus report indicates that he compared the ladder to the standards in ANSI A 14.2 and discusses how he considered that standard in relation to his opinion. [*Id.*]. He further notes that "[d]ue to the damage to the ladder, it is not possible to perform any of these loading tests" as related to the ANSI standards. [*Id.*]. Dehus states that during his examination he took 42 photographs and provides them on a CD. [*Id.*]. Finally, Dehus' report states his conclusions:

> From a review of the photographs provided and information learned from Mr. Mayer, it does not appear that the ladder was being used improperly or was overloaded. This ladder has a wight rating of 225 lbs. and as indicated earlier, Mr. Mayer weighted 185 lbs. The only weight that he had in addition to his own body weight was the weight of a bolt and nut that he was holding in his hand. Since the ladder was being used properly and was not being overloaded, the only conclusion that can be drawn is that the design, thickness, and strength of the aluminum used to construct the left front rail was insufficient to support the weight for which the ladder was rated. While no metal fatigue was specifically observed, metal fatigue and/or defect in the metal casting cannot be ruled out. It is the opinion of this examiner that insufficient strength in the ladder rail was the case of the failure and Mr. Mayer's fall and subsequent injuries.

---

[5] After Defendants moved to exclude Dehus' opinion, Mayer attached a supplemental affidavit from Dehus, asserting that "[a]n examination of the ladder clearly showed that there was a structural failure that caused this accident." [DE 68-1 at 1066].

[DE 53-1 at 642-643]. Dehus' report contains a statement of his opinions and the basis/facts for those opinions required in Rule 26(a)(2)(B)(i)-(iii), including the location photographs of the incident, the inspection photographs contained on a CD, his interview with Mayer, and the specific ANSI standard considered.

Further, the disclosure complied with Rule 26(a)(2)(B)(iv)-(vi) by providing Dehus' Curriculum Vitae, listing of cases, and invoice. [DE 53-1 at 644-52]. As set forth in his Curriculum Vitae, Dehus holds a Bachelor of Science degree in Biology from Otterbein College and a Master of Science degree in Biology/Biochemistry from Wright State University. [DE 60-1 at 725]. Dehus' expert disclosure offers a list of training in forensic science: Forensic Microscopy, Forensic Serology, Forensic Microscopy, Accident Reconstruction, Microscopy of Hairs, Forensic Geology, DNA Analysis, Fire and Explosion Cause & Origin, and BAC DataMaster-Its Theory and Operation-Field Sobriety Testing. [DE 60-1 at 725]. Dehus' expert disclosure states that he has testified on over 1500 occasions as an expert witness, "concern[ing] a wide range of Forensic Science areas, including alcohol and toxicology, trace evidence, serology, firearms examination, fire cause and origin, and others." [DE 53-1 at 646]. Per Dehus' supplemental affidavit, Dehus has "been employed in dozens of product liability cases and at least 6 cases involving ladder failures." [DE 68-1 at 1066]. Accordingly, Dehus' disclosure met the requirements of Rule 26(a)(2)(B).

C.      *Dehus' Qualifications*

Defendants argue that Mayer is "unable to meet his burden of establishing Dehus is qualified to render opinions in this lawsuit." [DE 59-1 at 706]. Defendants assert that "[n]oticeably absent from the list is any experience, formal or informal, regarding metallurgy, or otherwise regarding the design, analysis, or testing of ladders," [DE 59-1 at 705], and "[t]he list of topics for which Dehus has previously provided expert testimony is similarly devoid of references to

products, including ladders, aluminum or other types" [*Id.* at 706]. In opposition to Defendants' motion, Mayer filed an affidavit clarifying that Dehus has "been employed in dozens of product liability cases and at least 6 cases involving ladder failures." [DE 68-1 at 1066].

The Court does "not consider 'the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). The Court must determine whether the witness is qualified to offer an opinion on the specific area of expertise. *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2005 WL 1868046, at *33 (N.D. Ohio Aug. 8, 2005) ("An expert may be highly qualified to respond to certain questions and to offer certain opinions, but insufficiently qualified to respond to other, related questions, or to opine about other areas of knowledge."). "Under the Federal Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth. The weight of the expert's testimony must be for the trier of fact." *Mannino v. International Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981). The burden is on the party offering the expert to show by a preponderance of proof that his experts are qualified and should be allowed to testify. *Daubert*, 509 U.S. at 592 n. 10; *E.E.O.C. v. Kaplan Higher Educ. Corp.*, 748 F.3d 749, 752 (6th Cir. 2014) (citing *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir.2001)).

Rule 702 requires an expert to "establish his expertise by reference to 'knowledge, skill, experience, training, or education." *Pride,* 218 F.3d at 577 (citing Fed. R. Evid. 702). Yet as the Sixth Circuit cautioned in *Pride*, although this requirement "does not mean that a witness is an expert simply because he claims to be," this requirement "has always been treated liberally." *Id*. (citing *In re Paoli RR Yard PCB Litigation*, 916 F.2d 829, 855 (3d Cir.1990)). Accordingly,

"rejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (citing Fed. R. Evid. 702).

An example of such an exception is found in *Eiben v. Gorilla Ladder Co.*, No. 11-CV-10298, 2013 WL 1721677, at *11 (E.D. Mich. Apr. 22, 2013). In *Eiben*, the court found that the proposed expert's testimony—offered as an expert in ladder design—could not be considered because "there is nothing in [the expert's] report or in any other cognizable evidence of record to establish that [the expert] is qualified to offer an opinion." *Id*. at *12. The court specifically took issue with the fact that "there is nothing in [the expert's] report concerning his education, licensure, training, or employment experience . . . and nothing to indicate that he has previously testified as an expert in any other defective ladder feet design cases." *Id*. at *11.

In contrast, Dehus' report lacks any of the deficiencies that the expert report in *Eiben* had. As previously mentioned, Dehus' report lists his degrees [DE 60-1 at 725], as well as a long list of training in forensic science—including training in accident reconstruction. [*Id*.]. Dehus has also "worked as a Forensic Scientist for 51 years . . . analyz[ing] several thousand cases applying the scientific method to the problem solving and analysis process," and has testified "as a forensic expert in over 1,500 trials across the country."[6] [DE 68-1 at 1066]. Moreover, unlike in *Eiben*, where there was "nothing to indicate" the expert had previous testified as an expert in ladder cases, 2013 WL 1721677, at *11, Dehus has been employed "in dozens of product liability cases and at least 6 cases involving ladder failures . . . and [o]n one or more occasions have testified in court on product liability cases." [DE 68-1 at 1066.]. As the district court noted in *W. Tenn. Chptr. of Associated Builders,* in the "rare case where a court excludes the testimony of an expert, it is rarely on qualification grounds." 300 F. Supp. 2d at 604. Instead, and "as part of the reliability prong,"

---

[6] Dehus disclosed a long list of cases he has been employed in as part of his expert disclosure, including a description of whether these cases were trials, depositions, or arbitrations. [DE 53-1 at 648-652].

the court asks "what is [the expert] an expert about?" [*Id.*]. Accordingly, Dehus' Curriculum Vitae and report suggest that Dehus has scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue—whether the ladder's failure was the result of Mayer's actions, or a failure of the ladder to function generally as expected given its weight standards. Because of his significant experience with accident reconstructions and prior experience in products liability cases involving ladders, Mayer has minimally met his threshold burden of showing that Dehus is qualified to testify, and the Defendants' critiques are more accurately framed as a challenge to the weight, not the admissibility of Dehus' opinions.

    D.    Reliable Foundation

    Even when the Court finds an expert has met Rule 702's threshold qualification requirements, "[t]he Court must determine whether evidence proffered under Rule 702 'both rests on a reliable foundation and is relevant to the task at hand.'" *Powell v. Tosh*, 942 F. Supp. 2d 678, 686 (W.D. Ky. 2013) (quoting *Daubert*, 509 U.S. at 597). To assist with this determination, the Supreme Court in *Daubert* laid out several factors[7] for courts to consider. *Daubert*, 509 U.S. at 592–94. Courts have "stressed, however, that *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case . . . [i]n some cases . . . the factors may be pertinent, while in other cases the relevant reliability concerns may focus upon personal knowledge or experience." *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (internal citations omitted) (finding that the *Daubert* factors "unhelpful" in a case involving

---

[7] The *Daubert* factors include "[w]hether a 'theory or technique . . . can be (and has been) tested'; [w]hether it 'has been subjected to peer review and publication'; [w]hether, in respect to a particular technique, there is a high 'known or potential rate of error' and whether there are 'standards controlling the technique's operation'; and [w]hether the theory or technique enjoys 'general acceptance' within a 'relevant scientific community.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149–50 (1999) (quoting *Daubert*, 509 U.S. at 592–94).

"expert testimony derived largely from [expert's] own practical experiences throughout forty years in the banking industry [because] [o]pinions formed in such a manner do not easily lend themselves to scholarly review or to traditional scientific evaluation"). "[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* Even so, Rule 702 requires an expert's testimony to be "based on sufficient facts or data," to be "the product of reliable principles and methods," and an expert must have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

      a.  <u>Sufficient Facts or Data</u>

Defendants seek exclusion under Rule 702(b) asserting that Dehus ignored relevant facts and data. [DE 59-1 at 708]. Defendants allege that Dehus failed to

> consider important information regarding the Ladder, including, for example, the design drawings for the model ladder and testing reports showing that the model passed all quality inspections both before and after the date of Manufacture. He similarly did not consider Mayer's deposition testimony, which demonstrated Mayer set up the Ladder on three different, uneven surfaces; was significantly overreaching at the time he fell; and/or was standing on the top step, which goes against the Ladder's express warnings.

[DE 59-1 at 707].

Dehus asserts that his opinion was based on his review of photographs "showing the placement of the ladder at the time of the accident," [DE 53-1 at 641], his interview of Mayer about the circumstances surrounding the accident, [DE 60-1 at 720], his physical examination of the ladder itself,[8] [DE 53-1 at 641], ASMI A standards, and photographs he took of the ladder post-accident. [DE 60-1 at 721-22].

---

[8] Dehus' report states that "due to the damage on the ladder, it was not possible to perform" any loading tests on the metal of the ladder. [DE 60-1 at 721].

While Dehus may not have specifically considered the ladder model or drawings or its quality inspections, it is not clear to the Court that these were factors required to be considered in determining whether Mayer's action were the cause of the accident or whether the ladder failed to perform as expected given Mayer's use of the ladder. Moreover, while he may have formed his opinions before Mayer's deposition, he based his understanding of the accident on pictures of how the ladder was situated at the time of the accident and Mayer's interview. As such, his opinion is based on a sufficient understanding of the facts. Differences in those facts and Mayer's statements during the deposition are fodder for cross examination, but not exclusion.  "[M]ere weaknesses in the factual basis of an expert witness' opinion bear on the weight of the evidence rather than on its admissibility." *McLean*, 224 F.3d at 800–01 (internal quotation marks and citations omitted). "[A]rguments related to 'contrary evidence' or 'incompleteness' also go to the weight of the evidence rather than its admissibility and are properly rejected at this juncture." *Thomas v. Lambert*, 606 F. Supp. 3d 592, 603 (E.D. Mich. 2022)(citing *United States v. Lang*, 717 F. App'x 523, 536 (6th Cir. 2017) (unpublished) ("Although Rule 702 does not require an expert to consider *all* the facts and data available, it does require the factual basis of his opinion to be *sufficient.*")); *see also Daubert*, at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (citation omitted)); *Whirlpool Props. v. LG Elecs. U.S.A., Inc.*, No. 1:03 CV 414, 2006 WL 62846, at *4 (W.D. Mich. Jan. 10, 2006) ("Selection of an inappropriate universe generally affects the weight of the resulting data, not its admissibility.") (citation omitted). As a result, Defendants' argument "fundamentally confuses the credibility and accuracy of [the expert's] opinion with its reliability." *In re Scrap.*, 527 F.3d at 529 (further noting that "[t]he task for the district court in deciding whether an expert's opinion is reliable is not to

12

determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation.") (citing Fed. R. Evid. 702). Accordingly, Dehus' opinion as to the cause of the ladder's failure is based on sufficient facts or data.

      b.  <u>Product of Reliable Principles and Methods and Reliably Applied the Principles and Methods to the Facts of the Case.</u>

Defendants also argue that Dehus should be excluded under Rule 702(c) and (d), asserting that Dehus' opinion is not "the product of reliable principles and methods," and that Dehus has not "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(c)-(d). Defendants argue that "Dehus's methodology – which can be fairly characterized as making a series of unsupported and unexplained inferences – does not pass scientific muster." [DE 59-1 at 707].

Dehus states in his report that:

> From a review of the photographs and information provided by Mr. Mayer, it does not appear that the ladder was being used improperly or was overloaded. This ladder has a weight rating of 225 lbs. and as indicated earlier, Mr. Mayer weighed 185 lbs. The only weight that he had in addition to his own body weight was the weight of the bolt and nut that he was holding in his hand. Since the ladder was being used properly and was not overloaded, the only conclusion that can be drawn is that the design, thickness and strength of the aluminum used to construct the front rail was insufficient to support the weight for which the ladder was rated.

[DE 60 at 721-22].

Specifically, Defendants argue that Dehus performed no scientific testing, which they assert is key to an expert offering an opinion. [DE 59-1 at 707].

> Dehus's analysis of the Ladder is limited to a visual observation of the damage to the Ladder. Based merely on the existence of the damage and an interview with plaintiff, Dehus concluded: (1) the Ladder was not being improperly used and was not overloaded; (2) the Ladder failure was caused by "insufficient strength in the ladder rail"; and (3) this failure caused Mayer to fall and injure himself. That is a fairly thin reed upon which to mount such weighty conclusions.

[*Id.*] Yet, the standard is flexible, and "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho,* 526 U.S. at 141. "[T]esting is not required in every case, particularly where, as here, the expert conducted an examination of the physical evidence." *Jacobs v. Tricam Indus., Inc.,* 816 F. Supp. 2d 487, 493 (E.D. Mich. 2011); *Kamp v. FMC Corp.,* 241 F.Supp.2d 760, 763–764 (E.D.Mich.2002) (testing not necessarily required where expert relies on professional experience and conducts physical examination); *Clark v. Chrysler Corp.,* 310 F.3d 461, 467 (6th Cir.2002) ("*Daubert* does not require an expert to come in and actually perform tests in any given situation"). Dehus' report minimally explains how his visual inspection of the ladder rails, review of photographs of the position and use of the ladder at the time of the accident, and the interview of Mayer led to his opinion that the failure was the result of insufficient strength in the ladder rail. This opinion is based on an inspection of the physical evidence; it is not an opinion that necessarily requires testing of a methodology or process. Moreover, Dehus specifically rules out testing of the actual ladder due to its damage. [DE 60-1 at 721]. The Court thus finds Dehus' opinion regarding the relationship between the use of the ladder as compared to the strength of the ladder rail to be admissible.

The Court notes however that this is a close call as in *Phillips v. Tricam Indus., Inc.*, the district court excluded the opinions of a proposed expert who based his conclusions on a similar method. No. 1:19-CV-00184, 2020 WL 1816468, at *9 (W.D. Mich. Feb. 20, 2020). The court noted that "there is no indication in the report as to what types, if any, tests [the expert] performed on the ladder . . . it appears from the report that, at most, [the expert] simply conducted some type of visual inspection." *Phillips v. Tricam Indus., Inc.*, No. 1:19-CV-00184, 2020 WL 1816468, at *8 (W.D. Mich. Feb. 20, 2020). Based on his visual inspection, the expert concluded that "(1) the ladder failure was 'not caused by overloading'; and (2) the ladder failure 'was caused by aluminum

metal fatigue.'" *Id*. Holding that the expert's opinions failed Rule 702's standards, the court explained: "there is no indication that [the expert] engaged in any effort to scientifically validate his opinions. He did not disclose any methodology used, and he did not reconstruct the accident to confirm his opinions." *Id*. at *9.

But, the Court finds *Phillips* is distinguishable for a few reasons. First, the court in *Phillips* had already found it could exclude the expert report as untimely produced. *Id*. at *5. Unlike the expert report in *Phillips*, Dehus' report was timely produced and complied with Rule 26's requirements. [DE 33]. Second, the court in *Phillips* also found significant that the expert in Phillips had little credibility, as he had "repudiated his opinion regarding metal fatigue, after another of plaintiff's own experts [] proved him wrong[.]" *Id*. at 9. Here, Dehus has been consistent—stating in his report that "insufficient strength in the ladder rail was the cause of the [ladder's] failure," [DE 53-1 at 643]; and stating in his supplemental affidavit that "an examination of the ladder clearly showed that there was a structural failure that caused this accident." [DE 68-1 at 1066]. Finally, the court in *Phillips* also observed that the expert "does not appear to have considered alternate explanations for the ladder fracture." *Id*.  Here, however, Dehus considered alternate explanations for the ladder failure and rejected them. Dehus noted that Mayer had placed the ladder on lawn, patio concrete and mulch, but opined that "it does not appear that the ladder was being used improperly." [DE 53-1 at 642]. Similarly, Dehus concluded that the ladder was not overloaded, noting that the ladder had a weight rating of 225 lbs, and that Mayer weighed 185 lbs and the only other weight he had was a bolt and nut in his hand. [*Id*., at 642-42]. As a result, Dehus' report demonstrates that he did take alternate explanations into account, and he rejected them.

Although it is a close call as to whether Dehus meets the standards regarding methodology, the Court finds that Mayer has minimally met his burden of showing that Dehus is qualified to

testify as to the cause of the ladder failure and that the issues raised can be adequately handled through cross examination and appropriate jury instructions. As a result, the Court **DENIES** Defendants' motion to exclude [DE 59] Dehus' testimony.

### 2. Mayer's Motion to Exclude and Motion to Strike

Mayer moves to strike Defendants' expert disclosure as untimely, as the deadline for disclosure was September 29, 2023, and Defendants sent their expert disclosures on October 6, 2023. [DE 62 at 987]. Mayer contends that the week-late disclosures should be struck as untimely, and Defendants therefore excluded from using the testimony in its entirety. [*Id.*]

Under Rule 37(c)(1), "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). *In Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015), the Sixth Circuit adopted a five-factor test for assessing whether a late or omitted disclosure is substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Creekmur v. Lowe's Home Centers*, LLC, No. 320CV00270BJBCHL, 2021 WL 1518643, at *3 (W.D. Ky. Apr. 16, 2021) (citing *Howe*, 801 F.3d at 748).

Turning to the first factor, surprise, Mayer does not argue that he was surprised by the expert designations. As Defendants point out, there is little indication that Mayer was surprised; Mayer agreed to the extension of time for expert disclosures, and the disclosures were submitted only one week after the original deadline. [DE 64 at 1003; *see* DE 54]. As a result, this factor weighs in favor of Defendants.

16

Secondly, Mayer does not argue that Defendants lack the ability to cure any surprise. Pursuant to the scheduling order, trial was set for July 29, 2024, [*see* DE 33], leaving nearly ten months for Defendants to cure any surprise. Mayer received the expert disclosures on October 6, 2023. [DE 62 at 987]. To the extent that Defendants did not cure any surprise resulting from the week-late disclosure, Mayer did not bring the issue to opposing counsel or the Court's attention until his motion on December 22, 2023, to strike and exclude the expert disclosures. Accordingly, this factor also weighs in favor of Defendants.

Third, Mayer does not argue that allowing the evidence would disrupt the trial. However, as noted above, trial is scheduled for July 29, 2024, approximately two months away. Allowing Defendants' experts to testify would likely necessitate a continuance to allow Mayer to depose Defendants' experts. As a result, this factor weighs in favor of Mayer.

Turning to the Fourth factor, importance of the evidence, the Sixth Circuit has explained that it has "found no case in which a Kentucky court has held that a plaintiff in a products liability case *must* produce expert opinion evidence that the product is unreasonably dangerous." *Jackson v. E-Z-GO Div. of Textron, Inc.*, 326 F. Supp. 3d 375, 401 (W.D. Ky. 2018) (citing *Stevens v. Keller Ladders*, 1 F. App'x 452, 458 (6th Cir. 2001)). However, as several courts in this circuit have noted, "expert witnesses are generally necessary, indeed essential, in products liability cases . . . to prove such matters as a product defect and proximate causation[.]" *Id.* (citing *Fimbres v. Garlock Equip. Co.*, No. 3:11-CV-226-CRS-JDM, 2014 WL 2612513, at *3 (W.D. Ky. June 11, 2014)); *Thomas v. Manchester Tank & Equip. Corp.*, 2005 WL 3673118, *1 (W.D. Ky. May 13, 2005); *Templeton v. Wal-Mart Stores E., LP*, No. CIV. 08-169-GFVT, 2011 WL 4591937, at *3 (E.D. Ky. Sept. 30, 2011). As a result, this factor weighs in favor of Defendants.

Finally, the fifth factor considers the non-disclosing party's explanation for its failure to disclose the evidence. Defendants' counsel states that they "mixed up deadlines," and that this "was an inadvertent error." [DE 64 at 996]. The Sixth Circuit has explained that "the task at the heart of Rule 37(c)(1) [is] separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citing *Bentley v. Highlands Hosp. Corp.*, No. CV 15-97-ART-EBA, 2016 WL 5867496, at *10 (E.D. Ky. Oct. 6, 2016)). There is nothing in the record to indicate—and Mayer does not argue—that the week-late disclosure was an attempt at "underhanded gamesmanship" as opposed to a "honest, harmless mistake[]". *Id*. As a result, the fifth factor weighs in favor of Defendants. For the reasons above, the Court finds that four of the five factors weigh against "the harsh remedy of exclusion." *Bisig*, 940 F.3d at 219. Accordingly, Mayer's motion to strike and exclude Defendants' expert testimony [DE 62] is **DENIED**.[9]

### 3. Defendants' Motion for Summary Judgment

#### a.    *Standard of Review*

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

---

[9] Mayer also moves to exclude "any expert opinions rendered by Michael P. Van Bree . . . as he was never identified by Defendants as an expert," citing to Van Bree's affidavit in Defendants' motion for summary judgment. [DE 62 at 987]. Defendants appear to disagree that Van Bree is an expert witness, stating that "Mayer does not identify in his motion what 'expert opinions' he wants this Court to exclude . . . Van Bree's Affidavit [] includes a series of **facts** and *not* opinions." [DE 64 at 1007] (emphasis in original). Regardless, to the extent that Mayer moves to exclude Van Bree's affidavit from consideration in the motion for summary judgment due to Defendant's lack of disclosure, Defendants point out that "Van Bree was identified in Louisville Ladder's initial disclosures, on October 18, 2022." [*Id*.]. As a result, the Court **DENIES** Mayer's motion to exclude Van Bree's affidavit.

*Lobby, Inc.*, 477 U.S. 242 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The movant has the initial burden to demonstrate the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States,* 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874

F.2d 351, 353 (6th Cir. 1989).

      *b.*      *Choice of Law*

As a threshold matter, Mayer's Amended Complaint cites to Maryland law as the basis of his claims. [*See* DE 22]. Mayer argues that Maryland substantive law should apply as Maryland has the "most significant relationship" in this case, [DE 67 at 1037 (citing to *Muncie Power Prods. v. United Techs. Auto., Inc.*, 328 F.3d 870, 874 (6th Cir. 2003))]. Accordingly, the Court must first determine which state substantive law applies to the motion for summary judgment.

As the court in *Muncie* noted, "Federal courts sitting in diversity must apply the choice-of-law rules of the forum state." 328 F.3d at 873 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). As an Ohio district court, the district court in *Muncie* was obligated to follow Ohio choice-of-law rules. *Id*. Similarly, this Court must apply Kentucky choice-of-law rules. Kentucky courts "have apparently applied Kentucky substantive law whenever possible . . . it is apparent that Kentucky applies its own law unless there are overwhelming interests to the contrary." *Mem'l Hall Museum, Inc. v. Cunningham*, 455 F. Supp. 3d 347, 358 (W.D. Ky. 2020) (citing *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983)); *see also Johnson v. S.O.S. Transp., Inc.*, 926 F.2d 516, 519 n. 6 (6th Cir. 1991) ("Kentucky's conflict of law rules favor the application of its own law whenever it can be justified."). "For a tort action, if there are 'significant contacts—not necessarily the most significant contacts—with Kentucky,' the Kentucky law should be applied." *Cunningham*, 455 F. Supp. 3d at 358 (citing *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972) and holding that a Kentucky resident was involved in a car accident which occurred in Ohio was sufficient contact to justify the application of Kentucky law, even though the accident occurred in Ohio and the tortfeasor was an Ohio resident). In *Cunningham*, the court held that even though the tort occurred

in Louisiana, Kentucky law applied because the case "concerns a Kentucky resident and citizen, and property that has been located in Kentucky for three decades," and it also found significant that the suit was filed in Kentucky. *Id.*

Like in *Cunningham*, although Mayer's accident happened in Maryland, [DE 67 at 1037], LLI is a citizen of Kentucky. [*Id.*].  Also like the plaintiff in *Cunningham*, Mayer chose to bring suit in Kentucky, not the state where the accident happened.  Accordingly, the Court finds that Kentucky has significant contacts, and Kentucky substantive law should apply.

### c. *Mayer's Strict Product Liability, Strict Liability-Design Defect, and Strict Liability-Manufacturing Defect Claims*

Mayer brings his Strict Product Liability, Strict Liability-Design Defect, and Strict Liability-Manufacturing Defect Claims against both LLI and the Walmart Defendants.  In a Kentucky products liability case, "the question is whether the product creates such a risk of an accident of the general nature of the one in question that an ordinarily prudent company engaged in the manufacture of such a product would not have put it on the market." *Hill v. Express Tan, Inc.*, No. 1:16CV-00175-JHM, 2019 WL 1757534, at *2 (W.D. Ky. Apr. 19, 2019) (citing *Montgomery Elevator Co. v. McCullough by McCullough*, 676 S.W.2d 776, 780 (Ky. 1984)). All products liability actions, regardless of the specific theory, require two things: "proof that the product is defective," *id.*, (citing *Leslie v. Cincinnati Sub–Zero Products*, Inc., 961 S.W.2d 799, 803–04 (Ky. App. 1998)), and "legal causation, which is a showing that defendant's conduct was a substantial factor in bringing about the harm." *Id.* (internal quotations omitted) (citing *Arch Ins. Co. v. Broan–NuTone,* 509 Fed. App'x 453, 462 (6th Cir. 2012) and quoting *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 77 (Ky. 2010)).

Although causation may be proven by circumstantial evidence, a plaintiff must still introduce evidence "that will support a reasonable inference that the defect was the 'probable'

cause of the accident as distinguished from a 'possible' cause among other possibilities; otherwise, the jury verdict is based upon speculation or surmise." *Greene v. B.F. Goodrich Avionics Systems, Inc.,* 409 F.3d 784, 793 (6th Cir. 2005) (quoting *Midwestern V.W. Corp. v. Ringley*, 503 S.W.2d 745, 747 (Ky. 1973)).

Finally, KRS 411.310(1) provides a statutory presumption that there was no design or manufacturing defect, stating that:

> In any product liability action, it shall be presumed, until rebutted by a preponderance of the evidence to the contrary, that the subject product was not defective if the injury, death or property damage occurred either more than five (5) years after the date of sale to the first consumer or more than eight (8) years after the date of manufacture.

In this case, the undisputed facts are that the accident occurred more than eight years (in 2021), [DE 58-1 at 665], after the ladder was manufactured, in 2010, [DE 58-2 at 689] and more than five years after it was sold, in 2014. [DE 58-1 at 664]. As a result, the court begins with a presumption that the ladder was manufactured or designed without defect. *See Hill*, 2019 WL 1757534, at *2 (citing *Kentucky Farm Bureau Mut. Ins. Co. v. A.O. Smith Corp.,* 2016 WL 1090636, at *2 (W.D. Ky. Mar. 18, 2016)).

Mayer points to his son Michael's deposition testimony to create a genuine dispute as to material fact, because Michael states that "the way the leg [of the ladder] looked, looked like the leg failed." [DE 67 at 1036]. But lay-person testimony such as this does not establish a defect, as "expert witnesses are 'generally necessary' in a Kentucky products liability case to prove the presence of a defect." *Wells v. Wal-Mart Stores Inc.*, 2016 WL 1453912, at *1 (E.D. Ky. Apr. 13, 2016). "In other words, 'a plaintiff must put forth expert testimony unless a defect is of the type that the jury can comprehend as well as a specially trained expert could.'" *Hill*, 2019 WL 1757534, at *2 (citing *Wells*, 2016 WL 1453912, *1).

Metal fatigue is not the type of defect that a jury can comprehend as well as a specially trained expert could. *See e.g., Phillips* 2020 WL 1816468, at *7 (excluding a witness from testifying that a ladder defect was caused by metal fatigue because he was not a qualified expert). As noted above, Mayer has met his burden to show that Dehus was qualified to opine on the cause of the ladder's failure. As a result, Mayer may rebut the presumption that the ladder was designed or manufactured without defect; Dehus' expert opinion is, in essence, that the ladder would not have failed unless it was defective in some way. [*See* DE 53-1 at 643; DE 68-1 at 1066]. Accordingly, viewing the facts in the light most favorable to Mayer and drawing all reasonable inferences in his favor, there is a genuine dispute as to this material fact—Defendants' experts say that the ladder was defective; Mayer's expert says it is not. LLI is therefore not entitled to summary judgment as a matter of law on Mayer's strict product liability, strict liability-design defect, and strict liability-manufacturing defect claims.

As for Mayer's strict liability claims against the Walmart Defendants, Kentucky's "middleman statute" prevents a seller of a defective product from liability "[i]n any product liability action" if "(1) the manufacturer [is] identified and subject to the Court's jurisdiction, and (2) the product sold by the wholesaler, distributor or retailer [was] unaltered from its original manufactured condition." *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 551 (E.D. Ky. 2001) (citing KRS § 411.340)). A seller is not protected if it "breached an express warranty" or if the seller "knew or should have known at the time of distribution or sale that the product was in a defective condition and unreasonably dangerous." *Id*.

Defendants concede that LLI manufactured the Ladder and are subject to this Court's jurisdiction, [DE 58-1 at 684], and assert that "[t]here is no evidence Walmart delivered the Ladder to a purchaser in anything other than its same, unaltered condition in which it was manufactured."

23

[*Id*.]. Moreover, although Mayer alleged in his Amended Complaint that a reasonable supplier should have known that the ladder was defective, [DE 22 at 279], Mayer has not shown any evidence creating a genuine dispute on this issue. Accordingly, the Walmart Defendants are entitled to summary judgment on Mayer's strict product liability, strict liability-design defect, and strict liability-manufacturing defect claims.

> d.    *Mayer's Strict Liability Failure to Warn and Negligent Failure to Warn Claims*

Mayer brings a Strict Liability Failure to Warn claim against LLI, and a Negligent Failure to warn claim against both LLI and the Walmart Defendants. For a products liability claim that alleges insufficient warnings, "a plaintiff must establish that: (1) the defendant had a duty to warn of the product's alleged dangers; (2) provided warnings were inadequate; and (3) warning inadequacy proximately caused the plaintiff's injuries." *Corder v. Ethicon, Inc.*, 473 F. Supp. 3d 749, 757 (E.D. Ky. 2020) (citing *Stewart v. Gen. Motors Corp.*, 102 F. App'x 961, 964 (6th Cir. 2004)).

As noted above, Kentucky's "middleman statute" protects the Walmart Defendants because Mayer has failed to create a genuine dispute as to whether LLI has been identified as the manufacturer and is subject to the Court's jurisdiction, and that the ladder was sold by Walmart unaltered from its original manufactured condition. *Salisbury*, 166 F. Supp. 2d at 551. Moreover, Mayer has failed to point to evidence creating a genuine dispute as to whether the Walmart Defendants knew or should have known at the time of distribution or sale that the product was in a defective condition and unreasonably dangerous. *Id*.

Yet even if the middleman statute did not apply, both LLI and the Walmart Defendants would still be entitled to summary judgment. Defendants move for summary judgment on these claims arguing that there is no evidence in the record that LLI or the Walmart Defendants failed

to give adequate warnings, or that such warnings proximately caused Mayer's injuries. [DE 58-1 at 679]. In his response, Mayer states that "he had not read all of the labels on the ladder," and specifically cites his deposition testimony that while he read the weight limit warning, he "did not read the other labels, so was not warned of the other hazards, which were presented by the use of the ladder." [DE 67 at 1032].[10] The only other mention of failure to warn in Mayer's response is contained in a two-page cite to a Maryland case, *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 406-08 (D. Md. 2001), where the court cursorily mentions that the plaintiff in that case had a failure to warn claim. [DE 67 at 1041]. In negligent failure to warn cases, "the plaintiff must establish that the inadequate warning proximately caused her injuries." *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 467 (6th Cir. 2022) (citing *Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. 1970)). Mayer does not point to any evidence in the record to show a genuine dispute as to any failure to warn, or that such a failure proximately caused Mayer's injuries; in fact, the evidence that he points to is his deposition testimony that there were other warnings he did not read. As a result, even viewing the facts in the light most favorable to Mayer and drawing all reasonable inferences in his favor, Defendants are entitled to summary judgment as a matter of law on Mayer's failure to warn and negligent failure to warn claims. *See e.g., Thomas v. Bombardier Recreational Prods., Inc.*, 682 F. Supp. 2d 1297, 1301 (M.D. Fla. 2010) ("It is certainly correct that a person who did not read a warning label is precluded from challenging the adequacy of the warning or from claiming that the allegedly inadequate warning proximately caused her any damage.").

---

[10] Defendants assert that there were, among others, three specific warning labels on the ladder:

"Set all feet on firm level surface. Do not place on unstable, loose, or slippery surfaces."
"Keep body centered between side rails. Do not overreach."
"Do not climb, stand, or sit above second step from top on stepladders."

[DE 58-1 at 664]. Mayer does not dispute that these labels were on the ladder.

e.     *Mayer's Negligence Claim*

Mayer brings Negligence claims in the context of LLI's alleged failure to exercise ordinary care in the design of the ladder and the Walmart Defendants' alleged failure to exercise ordinary care in providing a warning in selling the ladder. [DE 22 at 276-77]. As noted above, the Walmart Defendants are protected from liability by KRS § 411.340, and as a result, are entitled to summary judgment on Mayer's Negligence claim. As for Mayer's Negligence claim against LLI, Mayer has provided a qualified expert to rebut the statutory presumption that LLI designed the ladder without defect. As a result, viewing the facts in the light most favorable to Mayer and drawing all reasonable inferences in his favor, LLI is not entitled to summary judgment on Mayer's negligence claim.

f.     *Mayer's Breach of Express Warranty and Breach of Implied Warranty of Merchantability Claims*

Mayer brings a claim for Breach of Express Warrant against both LLI and the Walmart Defendants, and a claim for Breach of Implied Warranty of Merchantability against LLI. Defendants move for summary judgment on Mayer's breach of warranty claims, arguing that there is no evidence in the record of either an express or an implied warranty, and that there therefore cannot be a genuine dispute as to either claim. It is true that a seller is not protected by KRS § 411.340 if it "breached an express warranty." But although Mayer cites to Maryland law for his claim for breach of express warranty, [*see* DE 22 at 268], he fails to identify in either his Amended Complaint or his Response the express warranty given by Defendants, or that Mayer relied on such a warranty. Proof that a plaintiff relied on an express warranty "is a fundamental requirement for recovery under any express warranty theory . . . [a]bsent any allegation of reliance, plaintiffs have no claim for breach of express warranty." *Young v. Stock Yard Farm & Dairy Supply Inc.*, No. 1:10-CV-00186-R, 2011 WL 864834, at *4 (W.D. Ky. Mar. 10, 2011) (citing *Salisbury v. Purdue*

*Pharma, L.P.*, 166 F. Supp. 2d 546, 552 (E.D. Ky. 2001)). Accordingly, even viewing the facts in the light most favorable to Mayer and drawing all reasonable inferences in his favor, both LLI and the Walmart Defendants are entitled to summary judgment as a matter of law on Mayer's breach of express warranty claim.

As to Mayer's claim for breach of implied warranty of merchantability, "a claim based upon an implied warranty must establish that [the plaintiff] enjoyed privity of contract with the defendant-seller against whom the implied warranty claim is asserted." *Sims v. Atrium Medical Corp.*, 349 F.Supp.3d 628, 642 (W.D. Ky. 2018) (quoting *Brown Sprinkler Corp. v. Plumbers Supply Co.*, 265 S.W.3d 237, 240 (Ky. App. 2007)). Moreover, "implied warranties in Kentucky do not extend beyond the buyer-seller relationship." *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 969 (E.D. Ky. 2019) (citing *Compex Int'l Co. v. Taylor*, 209 S.W.3d 462, 465 (Ky. 2006)); *Bosch v. Bayer Healthcare Pharms., Inc.*, 13 F. Supp. 3d 730, 748 (W.D. Ky. 2014).

Defendants argue that Mayer has failed to show a genuine dispute as to whether Mayer enjoyed privity of contract with LLI or the Walmart Defendants because there is no evidence in the record that Mayer bought the ladder from LLI or the Walmart Defendants. [DE 58-1 at 681]. Defendants point to Mayer's son's deposition testimony, where when asked whether he had "a specific recollection of either when [he] bought the ladder or where [he] bought the ladder from," he stated "specifically, no." [DE 61-4 at 940-41]. Mayer's son also stated that he was unsure whether he bought it at Home Depot or a Walmart. [Id.]. Mayer does not point to any evidence in the record to create a genuine dispute as to these facts. Accordingly, even viewing the facts in the light most favorable to Mayer and drawing all reasonable inferences in his favor, LLI is entitled to summary judgment on Mayer's claim for breach of implied warranty of merchantability.

g.      *Mayer's Claim for Violation of the CPSA*

Meyer alleges LLI violated the CPSA by "intentionally and knowingly fail[ing] to timely, properly and accurately inform the [Consumer Product Safety Commission] that their ladders were defective, unreasonably dangerous and substantially hazardous." [DE 22 at 271]. LLI argues it is entitled to judgment as a matter of law because "[t]he Consumer Products Safety Act does not contemplate a private cause of action for violation of the reporting rules." [DE 58-1 at 682 (citing *Daniels v. Am. Honda Motor Co., Inc.*, 980 F.2d 729 (6th Cir. 1992) (Table))]. To begin, as outlined above, Mayer has produced a qualified expert to rebut the statutory presumption that the ladder was manufactured or designed without a defect. However, neither Mayer's Amended Complaint nor Response cite to any facts in the record to create a genuine dispute on this issue, or even address Defendants' argument. Furthermore, Defendants correctly assert that there is no private cause of action for violations of the CPSA's reporting requirements. *Daniels*, 980 F.2d at 729 (6th Cir. 1992) ("We agree with the reasoning of those circuits, and join in their conclusion that the Consumer Products Safety Act does not recognize a private cause of action for violations of the Act's reporting requirements."). Accordingly, even viewing the facts in the light most favorable to Mayer and drawing all reasonable inferences in his favor, LLI is entitled to summary judgment as a matter of law on this issue.

h.      *Mayer's Punitive Damages Claim*

Finally, Mayer alleges an independent claim for punitive damages against both LLI and the Walmart Defendants. Defendants move for summary judgment on this claim, arguing that punitive damages are not a standalone claim. It is well established that "a claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action." *KY Closeouts, LLC v. Eagle Trace, Inc.*, 2023 WL 2755303, at *2 n. 2 (W.D. Ky. Mar.

31, 2023) (citing *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378-79 (W.D. Ky. 2012)).

Accordingly, Defendants are entitled to summary judgment as a matter of law on Mayer's punitive

damages claim. To be clear, the Court is not foreclosing Mayer from seeking punitive damages at

trial. Although Mayer may not proceed with an independent claim for punitive damages, he may

still seek punitive damages at trial. *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 870

(Ky. 2016) ("punitive damages may be awarded, when the evidence satisfies either the statutory

standard of KRS 411.184(2), or the common law standard of gross negligence.")).

## CI.    CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS

ORDERED** as follows:

(1) Defendants' motion to exclude [DE 59] is **DENIED**.

(2) Mayer's motion to strike and exclude [DE 62] is **DENIED.**

(3) Defendants' motion for summary judgment [DE 58] is **GRANTED in part** and

**DENIED in part.** Defendants' motion is granted as to Mayer's Strict Product Liability,

Strict Liability-Design Defect, and Strict Liability-Manufacturing Defect Claims

against the Walmart Defendants; Mayer's Strict Liability Failure to Warn claim against

LLI and Negligent Failure to Warn claims against both the Walmart Defendants and

LLI; Mayer's Negligence Claim against the Walmart Defendants; Mayer's claim for

Breach of Express Warranty against both the Walmart Defendants and LLI; Mayer's

claim for breach of Implied Warranty against LLI; Mayer's claim for violation of the

CPSA against LLI; and Mayer's independent claim for Punitive Damages against both

LLI and the Walmart Defendants. Defendants' motion is denied as to Mayer's Strict

Product Liability, Strict Liability-Design Defect, and Strict Liability-Manufacturing

Defect, and Negligence claims against LLI.

(4) Because no claims remain against the Walmart Defendants, the Clerk of Court is

**DIRECTED** to terminate them as parties to this action on the docket sheet.

June 24, 2024

Rebecca Grady Jennings, District Judge

United States District Court

cc:     Counsel of record